Albert BULLOCK, Plaintiff,

v.

William BARHAM, et al., Defendants.

No. 94 C 4755.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 1998.

Albert Bullock, Joliet, IL, pro se.

James J. Bigoness, Pappas, Power & Marcus, Chicago, IL, for Plaintiff.

Edward B. Glicken, Amy S. Ratterree, Ill. Atty. General's Office, Chicago, IL, Susan

Takata O'Leary, Ill. Dept. of Corrections, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Albert Bullock, an inmate at Joliet Correctional Center ("Joliet"), filed an amended complaint against three Joliet officials, William Barham, Keith Cooper, and Matthew Meier. Mr. Bullock alleges claims under 42 U.S.C. § 1983 and state law claims of conversion and intentional infliction of emotional distress. His state law claims and the claims against Sgt. Meier were dismissed. Mr. Barham and Warden Cooper move for partial judgment on the pleadings on Mr. Bullock's Eighth Amendment and due process claims. For the reasons set forth below, the motion for partial judgment on the pleadings is granted in part and denied in part.

### Background

Mr. Bullock claims that while in prison his life has been threatened by inmates who are members of the Black Gangster street gang. The gang has allegedly placed a "hit" on him in retaliation for leaving the gang. He says that he informed the prison authorities of the threats against his life. Although Mr. Bullock states that he is currently in protective custody, he alleges that the defendants previously failed to protect him by placing him in the general population numerous times when he should have been placed in protective custody. He does not allege any physical injury. He seeks to enjoin his transfer to the general population and seeks actual damages for mental and emotional distress and punitive damages.

Additionally, Mr. Bullock alleges that he was wrongfully placed in segregation for 38 days after he refused to move to a cell area with known members of the Black Gangster gang. During that period, he claims he was forced to remain in his cell for 24 hours a day. He states he was denied phone calls, access to the law library, exercise, yard time, access to the commissary, and association with other inmates in protective custody.

Finally, Mr. Bullock alleges that in retaliation for filing this lawsuit the defendants refused to allow him to make unmonitored phone calls to his court appointed attorney, opened his incoming legal mail, and filed false charges against him including an assault charge on June 23, 1995 and an arson charge on June 25, 1995.

### Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should not be granted unless the plaintiff cannot prove any facts that would support his claim for relief. *Gustafson v. Jones,* 117 F.3d 1015, 1017 (7th Cir.1997). The court must view the facts in the complaint in the light most favorable to the non-moving party. *Id.*

### A. Eighth Amendment

Prison officials have a duty to protect inmates from unwarranted physical injury by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prisoner may bring an action for failure to protect under the Eighth Amendment if he establishes that he was incarcerated under conditions posing a substantial objective risk of serious harm and that the prison officials were deliberately indifferent to his health or safety. *Id.* 511 U.S. at 834, 114 S.Ct. 1970. A prisoner may recover damages if he suffers physical injury from the failure to protect or if he suffers psychological injury resulting from "malicious and sadistic behavior that, in the majority's view, always offends contemporary standards of decency." *Babcock v. White,* 102 F.3d 267, 272–73 (7th Cir.1996).[1] A prisoner may also obtain injunctive relief to enjoin the continuing disregard for his safety. *Id.* 102 F.3d at 273.

The defendants move for judgment on the pleadings arguing that Mr. Bullock has not suffered any actual harm. Under *Babcock,* Mr. Bullock's allegations are insufficient to support a claim for damages because he has not alleged any physical injury. Fur-

---

1. An example of such behavior is "a prison guard placing a revolver inside an inmate's mouth." *Babcock,* 102 F.3d at 273.

thermore, *Babcock* rejected a claim for psychological injury similar to Mr. Bullock's resulting from the prisoner's fear of an assault due to the prison's failure to separate him from other inmates who threatened his life.[2] Mr. Bullock's claim for injunctive relief, however, is cognizable. Even though Mr. Bullock is currently in protective custody, Mr. Bullock alleges that the defendants have previously ignored the threats against his life and have transferred him back to the general population on several occasions. Mr. Bullock's action for injunctive relief will not be dismissed.

### B. Due Process

 When analyzing a claim for procedural due process, the court must ask (1) whether there exists a life, liberty, or property interest with which the state has interfered, and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). The defendants contend that no liberty interests were implicated when Mr. Bullock was placed in segregation.

In *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that while states may create liberty interests for inmates which are protected by the due process clause, "these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." It then held that the prisoner's discipline in segregated confinement for 30 days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* 515 U.S. at 486, 115 S.Ct. 2293; *see also Thomas v. Ramos,* 130 F.3d 754, 759–62 (7th Cir. 1997) (applying the *Sandin* standard and finding that a prisoner's segregation for 70 days did not implicate any liberty interest). In reaching that conclusion, the Court compared the conditions of inmates inside and outside disciplinary segregation and examined whether the disciplinary action would affect the duration of the prisoner's sentence. *Sandin,* 515 U.S. at 486–87, 115 S.Ct. 2293. The Court found that the prisoner's punishment, disciplinary segregation, mirrored the conditions imposed upon inmates in administrative segregation, in protective custody, and during "lockdown time" and that the punishment did not affect the duration of his sentence. *Id.*

Although Mr. Bullock's claim appears to be similar to that of the prisoner in *Sandin,* *Sandin* was decided after an examination of the facts to determine whether the prisoner's segregation was atypical. On this motion, based solely on the pleadings, it is impossible to tell if Mr. Bullock's treatment was atypical or represented a significant hardship. Judgment on the pleadings on this claim is therefore denied.

### Conclusion

For the foregoing reasons, the defendants' motion for partial judgment on the pleadings is granted in part and denied in part.

---

**2.** For this reason, I do not reach the defendants' alternative argument that under the Prison Litigation Reform Act ("PLRA") "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).